Betty Jean JONES et al., Appellants,

v.

CITY OF DALLAS, Appellee.

No. 17387.

Court of Civil Appeals of Texas, Dallas.

Feb. 6, 1970.

Rehearing Denied Feb. 27, 1970.

## FACTS

At approximately 1:00 o'clock a. m., August 27, 1963, a fire truck, owned by the appellee City of Dallas, was proceeding in an easterly direction on Davis Street and being driven by Alexander E. Chesney, a member of the Dallas Fire Department. The fire truck was being operated in response to a fire alarm. Joseph H. Jones, also a member of the fire department, was riding on the fire truck. At the same time an unmarked police car, owned by the City of Dallas, and being driven by police patrolman Roy Underwood, and in which police patrolman L. B. Kirkpatrick was a passenger, was traveling north on Zangs Boulevard, such car being driven towards a chase between another police car and a law violator in another part of the city. It is undisputed that both the policemen and the firemen of the City of Dallas were acting within the course and scope of their employment. As the fire truck was crossing the intersection of Davis and Zangs the police car was driven into the side of such vehicle, resulting in the death of Jones.

## OPINION

The basic question to be decided by this appeal is whether the trial court was correct in granting appellee's motion for summary judgment, thereby applying the doctrine of governmental immunity which had been pled by appellee City as a complete bar against any recovery of damages under the circumstances. Appellants sought to evade the interdiction of the admittedly valid doctrine of governmental immunity by pleading that certain acts of omission and commission on the part of the City constituted nuisances for which the City would be liable. Appellants also seek to evade the disastrous effect of the doctrine by contending that the appellee City was guilty of various acts of negligence in the performance of a proprietary function, as opposed to a governmental function, which would render the City liable. Finally, appellants contend that the doctrine of gov-

June R. Welch, Dallas, for appellants.

N. Alex Bickley, City Atty., Ted P. Mac-Master, Asst. City Atty., Dallas, for appellee.

## CLAUDE WILLIAMS, Justice.

This is an action to recover damages for the alleged wrongful death of Joseph H. Jones. Plaintiffs and intervenors in the trial court were the surviving beneficiaries as enumerated in Art. 4675, Vernon's Ann. Civ.St. of Texas. Defendants were the heirs of Roy Underwood, deceased, L. B. Kirkpatrick, and the City of Dallas. The action against the Underwoods and Kirkpatrick was severed and filed as another cause. The district court granted the motion for summary judgment of the City of Dallas decreeing that plaintiffs and intervenors take nothing.

ernmental immunity is outmoded and that this court should strike it down.

In appellants' first group of points they contend that (1) the failure to keep emergency vehicles informed of the presence and movements of other emergency vehicles; (2) the operation of an emergency vehicle incapable of performing properly; and (3) the operation of an unmarked police car at a high rate of speed, with no siren sounding and no warning lights operating, each constituted a nuisance.

Summary judgment evidence reveals that the police in the unmarked automobile had heard on their radio of a chase between another police car and a law violator in some other part of Oak Cliff and they were driving at a high rate of speed in order to locate and join such chase. Neither the police vehicle nor the fire truck was informed by the City of Dallas that the other emergency vehicle was in the same vicinity. It is undisputed that as the unmarked police car approached Davis Street it was not sounding a signal of its approach nor did it display any warning lights. It was traveling at a rate of speed in excess of the 30 mile per hour legal limit at the intersection.

The fire truck in question was a 1945 model. The fire station was located at Bishop and Davis where the fire truck in question and another fire truck were kept. On this occasion both trucks had left the station and were traveling down Davis, the truck in question following the first truck. The truck on which Jones was riding was known as a reserve truck and described by the driver Chesney as "just an old, slow truck." Chesney said that as he approached Zangs the other truck had gone through the intersection and he slowed the speed of his truck as he went through. Between the time he left the fire station and where the accident occurred he had never driven more than 20 miles per hour. He said, "this was an old reserve truck and the horsepower on it was real low for all that weight, and you can't drive one very fast." He said the maxi-mum speed that the truck could have been operated was probably 45 miles per hour but that he had never "floor-boarded it" at any time prior to the collision.

Appellee City contends that its operation of the police vehicle and the fire truck, under the circumstances disclosed in this record, does not constitute a nuisance in law. We agree.

■ There is no evidence in this record which would demonstrate a duty on the part of the City of Dallas to give an audible warning or signal to one emergency vehicle concerning the whereabouts of other emergency vehicles operating within the area. All of the evidence is conclusive that each of the City's vehicles involved herein was in the performance of a governmental duty, as defined by law. Both the police vehicle and the fire truck were "authorized emergency vehicles" as defined by Art. 6701d, V.A.C.S. Section 172 of that statute expressly exempts from the provisions of the law regulating speeds of vehicles those which are being operated by the fire department and police department of a city. The record is also devoid of any evidence of mechanical deficiency in the fire truck which would cause it to be inherently dangerous and thereby constitute a nuisance. The only testimony with reference to the fire truck came from the driver Chesney who merely said that the truck was old and slow and with limited horsepower. Even so it could attain a maximum speed of 45 miles per hour but such speed was not necessary on this occasion. Chesney testified to no facts which would justify the conclusion that some mechanical defect in the vehicle caused or contributed to cause the collision and resulting death of Jones.

In Gotcher v. City of Farmersville, 137 Tex. 12, 151 S.W.2d 565, 566 (1941), the City of Farmersville was charged with maintaining a nuisance in the form of a cesspool in which a child was drowned. Chief Justice Alexander pointed out that there are authorities which hold that a

municipality is liable for damages caused by the maintenance of a nuisance, even though the municipality in maintaining the same is engaged in the exercise of a governmental function. However, he said: "* * * in order to create liability for the maintenance of a nuisance, the nuisance must in some way constitute an unlawful invasion of the rights of others." He concluded by holding that the cesspool, as such, did not constitute a nuisance for which the city would be liable.

In Parson v. Texas City, 259 S.W. 2d 333 (Tex.Civ.App., Fort Worth 1953, writ ref'd), the court held that continued maintenance by the city of an automatic traffic signal light which was out of repair so as to simultaneously display green lights to moving traffic in intersecting directions, would not constitute a "nuisance" making the city liable for such maintenance while the city was engaged in the performance of a governmental function. The court said that in order to constitute a nuisance for which the city would be liable the danger must be inherent in the thing itself:

"If a city owes no legal duty to the public to repair and maintain in good working order a traffic signal light it has installed, it would seem that its failure to do so would not constitute an unlawful invasion of the rights of a complaining party, under the rule laid down in Gotcher v. City of Farmersville, supra.

We believe that the weight of authority in this state and other jurisdictions is to the effect that to constitute a nuisance the danger must be inherent in the thing itself, beyond that arising from negligence in its use, and are constrained to hold that the maintenance of the signal light in the condition described in appellants' pleadings did not constitute a nuisance making the City liable, and that the court did not err in sustaining appellee's motion for summary judgment."

See also Strickland v. City of Odessa, 268 S.W.2d 722 (Tex.Civ.App., El Paso 1954); Baker v. City of Waco, 129 S.W. 2d 499 (Tex.Civ.App., Waco 1939, no writ); Walker v. City of Dallas, 278 S.W. 2d 215 (Tex.Civ.App., Amarillo 1953, no writ); Barnes v. City of Waco, 262 S.W. 1081 (Tex.Civ.App., Waco 1924, writ ref'd); and City of Wichita Falls v. Robison, 121 Tex. 133, 46 S.W.2d 965 (1932).

Applying this rule to the summary judgment evidence before the court in this case we find no evidence of any inherent danger or defect in either the fire truck or the police car which would cause same to be a nuisance in law.

The identical complaint of appellants here concerning the use by the City of an unmarked police car being driven by its policeman at a high and dangerous rate of speed without visible signals or audible sirens was presented in Mayes v. City of Wichita Falls, 403 S.W.2d 852 (Tex.Civ. App., Fort Worth 1966, writ ref'd n. r. e.). The court, in affirming the judgment of the trial court denying recovery against the city, held that (1) a city is not liable for the negligence of its officers in appointing incompetents for the police force; (2) the fact that the city's agent in the discharge of governmental police functions was guilty of acts which would constitute inherently dangerous conduct would not alter the municipality immunity and (3) that a municipality is not liable for failure to use due care in properly selecting and equipping its police department automobiles where there is no obligation or penalty imposed on a municipality by law in regard to care or duty as to the selection and equipping of the automobiles to be used by police officers in discharging their functions. See also City of Houston v. Selph, 356 S.W.2d 850, 851 (Tex.Civ. App., Houston 1962, no writ).

We also agree with appellee City that the effort on the part of appellants in this case to convert negligence into nuisance by pleading alone is ineffective.

The courts of this state have repeatedly held that the principle of nonliability of the city for the negligent acts of its employees while engaged in a governmental function cannot be eliminated by merely pleading that such negligent acts constitute a nuisance. Walker v. City of Dallas, 278 S.W.2d 215 (Tex.Civ.App., Amarillo 1953); Parson v. Texas City, 259 S.W.2d 333 (Tex.Civ.App., Fort Worth 1953); Gonzalez v. City of El Paso, 316 S.W.2d 176 (Tex.Civ.App., El Paso 1958, no writ); Luvaul v. City of Eagle Pass, 408 S.W.2d 149 (Tex.Civ.App., Corpus Christi 1966, writ ref'd n. r. e.); and Steele v. City of El Paso, 417 S.W.2d 923 (Tex.Civ.App., El Paso 1967, writ ref'd n. r. e.).

The authorities already cited herein demonstrate the complete lack of merit of appellants' second group of points in which they attempt to impose liability on the theory that the City's employees were engaged in carrying out a proprietary function and not a governmental function of the city.

In their final point of error appellants earnestly contend that the basic reason for the ancient common law doctrine of governmental immunity has .been dissipated in our modern day society so that we should judicially strike it down. There has been an abundance of legal writings on the subject of retreat from governmental immunity.[1] The Legislature has seen fit to enact a tort claims act,[2] effective January 1, 1970, which, within specified limitations, eliminates the governmental immunity doctrine in Texas. However, as we pointed out in the recent case of Meska v. City of Dallas, 429 S.W.2d 223 (Tex.Civ.App., Dallas 1968), we believe it is not our function as an intermediate appellate court to strike down a

rule long established and approved by our Supreme Court.

We have carefully examined all of appellants' points of error and find the same not to reveal reversible error and the judgment of the trial court is therefore affirmed.

Affirmed.

---

1. See "Should Governmental Immunity for Torts Be Re-examined, and If So, by Whom?", by Justice Joe R. Greenhill, Vol. 31, Texas Bar Journal, December 22, 1968, p. 1036; and Comments on "The Governmental Immunity Doctrine in Texas," Southwestern Law Journal, Vol. 23, No. 2, p. 341.

2. House Bill No. 456, Ch. 292, 61st Legislature, Regular Session, 1969, p. 874 et seq.